LINDER, Appellant,

v.

AMERICAN NATIONAL INSURANCE COMPANY, Appellee.

[Cite as *Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030191.

Decided Oct. 10, 2003.

32

Christopher T. Laber, for appellant.

Drew & Ward and James H. Coogan, for appellee.

MARK P. PAINTER, Judge.

{¶ 1} Plaintiff-appellant, Ruth Linder, appeals from the entry of summary judgment for defendant-appellee, American National Insurance Company ("American National"). We affirm the trial court's judgment in all aspects.

{¶ 2} Walter Martin had been in the insurance business for the greater part of four decades. He had worked as an agent for a number of insurance companies and had even started his own insurance business in the mid–1980s. Martin admitted that he has had problems with drinking for all of his adult life. Several former employers dismissed Martin because of his drinking. He participated in numerous inpatient treatment programs in attempts to combat his drinking. Unfortunately, Martin's efforts to curb his drinking failed.

{¶ 3} In 1977, Martin filed a Chapter 13 bankruptcy petition. As of 1998, Martin's credit report indicated that he had 40 credit cards with nearly $280,000 in debt under the names Walter Martin Jr. and Walter Martin Sr.

{¶ 4} Martin was an appointed agent for several insurance companies in the early 1990s, including American Travelers Insurance (now Conseco). Martin first visited Linder in her retirement home in the early to mid–1990s in his capacity as

an American Travelers agent. At that time, Linder already had two insurance policies with American Travelers. Martin continued to visit Linder once or twice each year to evaluate her insurance needs. He never sold her insurance from any company other than American Travelers.

{¶ 5} In 1998, Martin applied for appointment as an agent for American National. He disclosed his 1977 bankruptcy, and American National obtained a credit report showing Martin's significant credit-card debt. Despite this information, American National appointed Martin as one of its agents. American National required that all agents obtain errors-and-omissions coverage within six months of their appointment. Martin failed to obtain this coverage. Within a year of his appointment, Martin filed his second bankruptcy.

{¶ 6} Linder lived alone in the Marjorie P. Lee Retirement Community on the east side of Cincinnati. She was 82 years old and was visually impaired. Her nearest relatives lived near Cleveland, Ohio. Linder's nephew, James Cleland, had prepared her tax returns and balanced her checkbook since the early 1990s. She continued to meet with Martin to discuss her insurance needs. In 1998, she purchased a long-term-care policy with American Travelers through Martin.

{¶ 7} In March 1999, Linder delivered five checks totaling $49,111.70 to Martin. During the next two weeks, Martin lost all of this money drinking and gambling. Martin later claimed that this money was a gift or a loan and that he had already begun paying it back under the terms of a promissory note. He claimed that Linder had signed the note upon the delivery of the checks. Linder said that she had given Martin the money to invest with an insurance company to earn a higher rate of return. She asserted that her signature on the promissory note was a forgery. For the purposes of this appeal, we assume that Linder's version of the facts is accurate.

{¶ 8} Linder later informed Cleland of her new investment. Linder requested that Martin provide Cleland with confirmation of the investment. Martin sent Cleland an American National Annuity Illustration that he had prepared on April 8, 1999, as well as an A.M. Best rating report on American National. Martin prepared the annuity illustration using software that American National had provided to him as its agent. The illustration bore American National's logo. This was the first time that Martin used the name American National in his dealings with Linder—all prior dealings with Linder involved American Travelers, an unrelated company.

{¶ 9} In an affidavit prepared in August 2000, Linder stated that she had given Martin the checks as an investment with American National. In a September 2001 deposition, Linder claimed that she could not remember the name of the company with which she was investing the $49,111.70. During the deposition, she had trouble differentiating between American Travelers and American National.

She may have thought that they were the same company. In a March 2002 affidavit, Linder claimed that she had purchased an investment product through Martin with a company whose name she could not remember. She recalled only that the company began with "American."

{¶ 10} Linder filed suit in February 2001. The original defendants were Martin, Conseco Senior Health Insurance Company (formerly American Travelers), and American National. Linder added Firstar Bank as a defendant in her amended complaint. The claims against Martin, Conseco, and Firstar Bank have been resolved and dismissed.

{¶ 11} American National moved for summary judgment, and the court granted the motion, finding that Linder's deposition testimony eliminated any genuine issue of material fact. Linder now appeals. Linder's sole assignment of error is that the trial court erred in granting summary judgment.

## I. Summary Judgment

{¶ 12} We review a grant of summary judgment de novo.[1] Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] A court shall grant summary judgment where reasonable minds can come only to a conclusion adverse to the nonmoving party.[3] The court must view all the evidence, including affidavits and depositions, in the light most favorable to the nonmoving party.[4] The party seeking summary judgment bears the initial burden of identifying the portions of the record that confirm the absence of any genuine issue of material fact.[5]

{¶ 13} In this case, the trial court based its grant of summary judgment on this court's ruling in *Bullock v. Intermodal Transp. Servs., Inc.*[6] Though *Bullock* involved an affidavit subsequent to a deposition, not a prior affidavit, we hold that the trial court properly applied the rule in *Bullock*. There has been no case in Ohio deciding the issue whether a party's deposition testimony essentially negates anything said in an earlier affidavit. We hold that it does.

---

1. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

2. Civ.R. 56(C).

3. Id.

4. *United States v. Diebold, Inc.* (1962), 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176; *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924.

5. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

6. *Bullock v. Intermodal Transp. Serv., Inc.* (Aug. 6, 1986), 1st Dist. No. C–850720, 1986 WL 8519.

{¶ 14} Some courts have allowed subsequent affidavits to defeat summary judgment.[7] But this court has held that a nonmoving party may not defeat a motion for summary judgment by filing an affidavit that directly, and without explanation, contradicts prior deposition testimony.[8] The logic behind *Bullock* and similar cases is based upon the degree of credibility inherent in a conflicting affidavit.[9] A party should not be allowed to create its own issues of material fact. This reasoning also applies to affidavits filed prior to a deposition.

{¶ 15} We stated in *Bullock*, "[W]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of any material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."[10] Here, Linder filed her affidavit nearly a year prior to her deposition. Both parties had the opportunity during that year to conduct discovery and examine the chain of events. Linder thereafter had the opportunity to give her deposition in support of her case. But her testimony contradicted her earlier affidavit. Linder gave clear answers to unambiguous questions during the deposition. Those answers reflected that Linder "never did know the company with which [Martin] was going to invest [the money]."

{¶ 16} Linder's August 2000 affidavit named American National as the provider of the investment product. But her deposition testimony revealed that Linder did not know the name of the company she was investing with. Her March 2002 affidavit stated that she only knew the name of the company to begin with "American." Her previous dealings were with American Travelers, not American National. Following the reasoning set forth in *Bullock* and extended here, Linder's deposition testimony was controlling.

## II. Express or Implied Contract

{¶ 17} Count three of the amended complaint alleged that American National was liable for breach of an express or implied contract to invest Linder's $49,111.70. American National claims that there were no genuine issues of material fact concerning this claim.

---

7. See, e.g., *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123; *K–Swiss, Inc. v. Cowens Sports Ctr., Inc.* (Nov. 8, 1995), 2d Dist. No. 95–CA–48, 1995 WL 655945.

8. *Pain Ent., Inc. v. Wessling* (Mar. 22, 1995), 1st Dist. No. C–930888, 1995 WL 121459.

9. See *Barile v. E. End Land Dev.* (Dec. 23, 1999), 11th Dist. No. 98–L–149, 1999 WL 1313639.

10. *Bullock,* supra.

{¶ 18} Ohio recognizes three types of contracts: express, implied in fact, and implied in law (or quasi-contract).[11] An express contract requires an offer, an acceptance, and mutual assent.[12] An implied-in-fact contract requires assent, but the court must construe the facts and circumstances surrounding the offer and acceptance to determine the terms of the agreement.[13] Contracts implied in law arise where one party wrongfully receives a benefit that gives rise to a legal obligation.[14]

{¶ 19} Linder's own deposition testimony established that there was no meeting of the minds. Linder did not claim that Martin ever mentioned American National. Construing the evidence in the light most favorable to Linder, there was no genuine issue of material fact as to whether Martin mentioned American National. If Martin never mentioned American National, there could never have been any meeting of the minds between Linder and American National or Martin as its agent. Even if we consider Martin as a possible agent of an undisclosed principal, there is still nothing indicating that American National was the principal. Summary judgment was therefore appropriate with respect to the existence of an express or an implied-in-fact contract.

{¶ 20} Summary judgment was also appropriate for the implied-in-law contract claim. Since there was no evidence that American National received any of the funds, no implied-in-law contract could have existed.

{¶ 21} Further, count three alleged only that Martin breached the contract. Martin's breach of contract could not have given rise to liability for American National unless Martin was acting as American National's agent. For the reasons discussed below, there was no evidence that showed that Martin was acting as American National's agent.

{¶ 22} We therefore affirm the trial court's grant of summary judgment on the contract claims.

### III. Agency and Respondeat Superior

{¶ 23} Count four of the amended complaint asserted claims under the theories of agency and respondeat superior. American National asserts that there were no genuine issues of material fact concerning these claims.

---

11. *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 540 N.E.2d 257.

12. Id.

13. Id.

14. Id.

{¶ 24} Liability based on an agency relationship arises where (1) the defendant induces the plaintiff to reasonably believe that the wrongdoer is operating as an agent for the defendant, and (2) the plaintiff relies on the agency relationship to her detriment.[15] Thus, there must be a "holding out" of the agent to the public.[16]

{¶ 25} The doctrine of respondeat superior states that an employer is liable for an employee's torts if the employee committed the tort in the scope of his employment.[17] If the tort is intentional, the employee's behavior must have been calculated to facilitate or promote the employer's business.[18]

{¶ 26} American National approved Martin as its agent in 1998. As American National's agent, Martin had authority to sell American National's insurance products. American National admitted that Martin had acted as its agent in the past. This was a sufficient "holding out" of Martin as an agent for those American National clients. But Linder knew Martin only as an American Travelers agent, even though she was aware that he was also an agent for other insurance companies. If she never knew where her money was going, she could not have relied on any agency relationship between Martin and American National.

{¶ 27} Linder's testimony demonstrated that she confused American National with American Travelers. If Linder did not know that American National was a separate entity, she could not have relied on any agency relationship. Summary judgment, therefore, was appropriate on the agency claims.

{¶ 28} According to Linder, Martin intentionally took $49,111.70 from her in an attempt to parlay the money into a larger sum to pay off his Chapter 13 bankruptcy. He did not invest the money with American National. He was not in fact acting as American National's agent, and there was no apparent agency.

{¶ 29} We therefore affirm the trial court's grant of summary judgment on the agency and respondeat superior claims.

## IV. Negligent Hiring and Retention

{¶ 30} Count five of the amended complaint sought damages for American National's negligent selection, appointment, training, and supervision of Martin.

---

15. *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 627 N.E.2d 986.

16. Id.

17. Restatement of the Law 2d, Agency (1958) 481, Section 219(1); *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

18. *Osborne,* supra.

American National argues that Linder did not rely on or suffer any damages because of Martin's status as an American National agent.

{¶ 31} The elements for any negligence claim consist of a duty, a breach of that duty, and injury proximately resulting from the breach.[19] The elements of an action for negligent hiring and retention are (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employee's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injury.[20]

{¶ 32} Even if American National were negligent in its appointment of Martin, there was no evidence that such negligence harmed Linder. As we have already held, Linder could not have relied on any agency relationship where Linder was unaware that American National even existed as a separate entity. If she could not have relied on the agency relationship, she could not have suffered injury as a proximate result of any reliance. Therefore, Linder failed to establish the fifth element of her negligent-hiring claim.

{¶ 33} We therefore affirm the trial court's grant of summary judgment on the negligent-hiring-and-retention claim.

## V. Fiduciary Duty

{¶ 34} Counts six and seven of the amended complaint asserted that Linder's damages were a direct and foreseeable result of American National's breach of its fiduciary duty. American National asserts that there were no material facts that established any fiduciary duty between American National and Linder.

{¶ 35} A fiduciary duty arises when a party places trust in the integrity and fidelity of another and there is a resulting position of superiority or influence acquired by virtue of this special trust.[21]

{¶ 36} Linder's deposition testimony unequivocally demonstrated that she was not aware where her money was supposedly being invested. Further, she could not distinguish American National from American Travelers. If she did not know where her money was going and did not know that American National could be involved, then she could not have placed her trust in American National.

19. *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

20. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 680 N.E.2d 161.

21. *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 69 O.O.2d 512, 321 N.E.2d 603.

American National never had a resulting position of superiority or influence. It therefore could not have been in a fiduciary relationship with Linder.

{¶ 37} We therefore affirm the trial court's grant of summary judgment on Linder's claims of breach of fiduciary duty.

## VI.   Acting with Malice

{¶ 38} Count eight of the amended complaint alleged that American National acted with malice and in willful and wanton disregard of the interests of Linder.   American National could not have acted with malice or willful and wanton disregard where neither American National nor Linder was aware of the other's existence.   Summary judgment was therefore appropriate.

{¶ 39} We therefore affirm the trial court's grant of summary judgment on count eight.   Accordingly, we affirm the trial court's judgment in its entirety.

Judgment affirmed.

DOAN, P.J., and GORMAN, J., concur.