**WOODING, Appellant,**

v.

**CINFED EMPLOYEES FEDERAL CREDIT UNION, Appellee.**

[Cite as *Wooding v. Cinfed Emps. Fed. Credit Union,*
171 Ohio App.3d 665, 2007-Ohio-728.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050958.

Decided Feb. 23, 2007.

Dola Jean Wooding, pro se.

Noe & Macleid Co., L.P.A., and C. Edward Noe, for appellee.

HILDEBRANDT, Presiding Judge.

{¶ 1} Plaintiff-appellant, Dola Jean Wooding, appeals the judgment of the Hamilton County Court of Common Pleas in favor of defendant-appellee, Cinfed Employees Federal Credit Union, in a suit alleging unfair lending practices. Wooding also appeals the court's judgment in favor of Cinfed on a counterclaim for an unpaid debt.

{¶ 2} In May 1998, Wooding received a loan from Cinfed for the purchase of an automobile. The loan document, captioned "Open End Credit Agreement," listed the car as collateral for the loan. It also provided the following: "COLLATER-AL: Collateral securing other loans with the credit union other than your personal residence will also secure this loan. All security listed above secures this debt and all other obligations excluding your personal residence, direct or indirect, absolute or contingent, now existing or hereafter arising with the credit union."

{¶ 3} Then, in August 1998, Wooding applied for a credit card with Cinfed. The application provided, "I understand that Cinfed Credit Union will be taking a security interest in any and all accounts (except individual retirement accounts) listed in my name(s). And in the event of default, I authorize Cinfed Credit Union to apply same accounts to payment of said obligations."

{¶ 4} A capitalized notice in the application further recited that Wooding would "agree to the terms and conditions accompanying the card(s)." Wooding initialed next to that provision, indicating that she had read it. She was approved for the credit card and incurred significant debt through its use. At some point, she defaulted on the credit-card debt.

{¶ 5} Wooding paid off the car loan in 2002, but she had not paid the entire balance on the credit-card account.

{¶ 6} In 2004, Wooding wrecked the car, and she requested that Cinfed provide her with the car's title so that she could obtain insurance proceeds. Cinfed

refused the request, stating that the car was collateral for the credit-card debt and that her default on that debt permitted Cinfed to retain the title to the car.

{¶ 7} Wooding filed suit, claiming that Cinfed's retention of the title violated various federal and state consumer-protection statutes. Cinfed filed a counterclaim, seeking the balance of the credit-card debt. In lieu of live testimony, the parties submitted trial memoranda to a magistrate.

{¶ 8} With its trial memorandum, Cinfed submitted an unsigned, undated document captioned "Cinfed Employees Federal Credit Union Visa/Mastercard Credit Card Account Agreement." The credit-card agreement stated, "If we now or hereafter hold any title, pledge or security interest in any of your property, it may be that the terms of the instrument creating the title, pledge or security interest will also secure your obligations on the Account."

{¶ 9} The magistrate recommended that judgment be entered in favor of Cinfed on all of Wooding's claims, concluding that Wooding had validly pledged the car as security for the credit-card account. The magistrate also recommended that Cinfed be awarded $2,531.63 on its counterclaim for the balance of the credit-card debt. The trial court overruled Wooding's objections to the magistrate's report and entered judgment in accordance with the magistrate's recommendations.

{¶ 10} In her first through fifth assignments of error, Wooding argues that the trial court erred in holding that the cross-collateralization clause in the credit-card agreement justified Cinfed's retention of the automobile title. We address the assignments together.

{¶ 11} A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[1] But even under that deferential standard, we hold that the trial court erred in this case.

{¶ 12} Wooding presents a number of arguments concerning federal and state consumer-protection laws. But our resolution of the assignments of error is very simple, because the record does not include an executed copy of the credit-card agreement.

{¶ 13} Throughout the proceedings, Wooding maintained that she had not seen the credit-card agreement. Although the signed credit-card application is in the record, the application stated only that Wooding would agree to the terms and conditions that would accompany the card. The record does not reflect that

---

1. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

Wooding had actually received the credit-card agreement, much less that she had understood and assented to its terms.

{¶ 14} And while the credit-card application stated that Cinfed could assert a security interest in Wooding's other "accounts," there was nothing in the application that identified the car or any other tangible property as collateral.

{¶ 15} Similarly, though the automobile-loan agreement recited that the car would serve as collateral for "all other obligations," there was nothing in any of the documents executed by Wooding to indicate specifically that the car would secure the credit-card account. Under these circumstances, we conclude that there was no meeting of the minds with respect to the cross-collateralization of the automobile.[2] We sustain the first through fifth assignments of error.

{¶ 16} In the sixth assignment of error, Wooding argues that the trial court erred in entertaining Cinfed's counterclaim. We find no error. Cinfed's counterclaim for the unpaid credit-card debt arose "from the transaction or occurrence"[3] that was the subject of Wooding's claim, and it did not require the presence of any party outside the court's jurisdiction. Accordingly, it was a compulsory counterclaim under Civ.R. 13(A), and we overrule the sixth assignment of error.

{¶ 17} In her seventh and final assignment of error, Wooding argues that the trial court erred in overruling her objections to the magistrate's report. We agree with Cinfed that this assignment of error is subsumed under the remaining assignments. We sustain it in part and overrule in part without addressing it in detail.

{¶ 18} The judgment of the trial court with respect to Wooding's claims is reversed. We hereby enter judgment declaring that the automobile was not collateral for the credit-car loan, and we order Cinfed to convey the automobile title to Wooding. In all other respects, we affirm the judgment of the trial court.

Judgment accordingly.

SUNDERMANN and HENDON, JJ., concur.

---

2. See, generally, *Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, at ¶ 19, and *Reedy v. Cincinnati Bengals, Inc.* (2001), 143 Ohio App.3d 516, 521, 758 N.E.2d 678.

3. Civ.R. 13(A). See, also, *Primus Auto Fin. Servs. v. Brown*, 163 Ohio App.3d 746, 2005-Ohio-5207, 840 N.E.2d 254, at ¶ 12.