DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants Rockport Realty Investments, Inc. ("Rockport") and George A. Scheid appeal a June 21, 2007 judgment of the Erie County Court of Common Pleas that granted summary judgment to appellees. Appellees are Edward J. Heben, Jr., HotHomesOhio.com, and National Title Agency Inc. ("National Title"). The litigation *Page 2 
arises out of the completed sale of a parcel of 39.12 acres of real property in Huron, Ohio and claimed interference, by appellees, with appellants' entitlement to a real estate commission on the sale.
 {¶ 2} Appellants filed suit in the Erie County Court of Common Pleas, alleging that appellees were liable to them for tortious interference with a real estate listing contract on the property and for negligence. In addition, they claimed appellee National Title was also liable for a claimed breach of fiduciary duty. Nanciann Riedel aka Nanciann Kobler ("Kobler") was the property owner. Kobler's interest in the property was through a land installment contract with Anna S. Riedel and the Karl Riedel Trust. Kobler, the trust, and Anna Riedel were also named defendants.
 {¶ 3} Appellants settled with Kobler and dismissed their claims against the trust and Anna Riedel. They now pursue appeal of the trial court's order granting summary judgment, but limit their appeal to the claim of tortious interference with contract claim alone. Appellants assign one error on appeal:
 {¶ 4} "1. The Trial Court erred when it granted summary judgment for Defendants Edward Heben, HotHomesOhio.com, and National Title Agency on Rockport's cause of action for tortious interference with contract."
 {¶ 5} Rockport entered into the exclusive listing contract with Kobler on February 27, 2002. The terms of the listing contract are not disputed. The listing contract provided Rockport with the exclusive right to sell the property for a period of six months with a stated commission of ten percent. After six months, Rockport remained *Page 3 
entitled to the sales commission on sales to identified prospective purchasers during an additional 180 day period. The parties do not dispute that the sale to Chad Abell, in December 2002, came within this additional 180 day period and that he was an identified prospective purchaser under the agreement.
 {¶ 6} Rockport is a licensed real estate broker. George Scheid is a real estate agent who works for Rockport. Regan Lutzko is a licensed real estate broker also with Rockport. Appellee Edward J. Heben, Jr. is an attorney and licensed real estate agent. It is undisputed that during his "discussions regarding the sale of the property," Heben acted as a real estate agent for HotHomesOhio.com and was the company president.
 {¶ 7} Heben first contacted Lutzko in July 2002, concerning the property. He worked through Lutzko to offer two separate written proposals for the sale of the property to Chad Abell[1]:
 {¶ 8} a proposed sales contract of July 29, 2002, with a proposed sale price of $250,000, and
 {¶ 9} a December 13, 2002 proposed sales contract at $300,000. Both were rejected by the seller, Kobler. After rejecting the December 13, 2002 proposal, Kobler wrote Lutzko of her willingness to sell the property for $350,000, net. Lutzko faxed a copy of the writing to Heben on December 15, 2002. *Page 4 
 {¶ 10} The parties disagree substantially on much of what occurred next. They agree that Lutzko and Heben talked about the difficulty in securing an agreement on a sales price and that Lutzko agreed that Heben could speak directly to Kobler. Heben claims that Lutzko informed him that "his exclusive listing agreement with the seller had expired and since he had listed the property for Five Hundred Fifty Thousand Dollars ($550,000.00), he was not going to be able to obtain a real estate commission on this transaction for a purchase price of Three Hundred Thousand Dollars ($300,000.00) or even Three Hundred Fifty Thousand Dollars ($350,000.00)." According to Heben, "Lutzko informed me that he was washing his hands of the matter and that if I wished to deal with the seller directly I was free to do so."
 {¶ 11} Appellants respond that Lutzko had faxed a copy of the listing contract to Heben in July 2002[2], and that Heben had actual knowledge of the listing contract terms entitling Rockport to a sales commission should Kobler sell the property at that time to Abell. Appellants also deny abandoning their rights or obligations under the listing agreement.
 {¶ 12} Appellants filed the affidavit of Regan Lutzko in opposition to the appellees' motion for summary judgment. Lutzko's affidavit directly conflicts with contentions by Heben on the motion: *Page 5 
 {¶ 13} "In Edward Heben's Affidavit and deposition testimony he stated that I told him I was `washing my hands of this matter' and that Rockport was out of this deal and that Rockport's Listing Contract had expired. These statements are patently false. Although I gave permission for Heben to contact my client, under nor [sic] circumstances did I authorize Heben or Hot Homes Ohio, Inc. to negotiate directly with her to the exclusion of Rockport. In addition, under no circumstances did I authorize Heben or Hot Homes Ohio, Inc. to cut me and Rockport out of this deal and our commission."
 {¶ 14} The last contract Heben proposed through Lutzko stated a $300,000 sales price and included a provision requiring payment of a real estate commission to Rockport and to Hot Homes Ohio, Inc. of seven percent. On December 16, 2002, Heben dealt directly with Kobler and forwarded a new proposal. The sale price remained $300,000. The revised contract included no provision for payment of a real estate commission.
 {¶ 15} Included in materials filed with the trial court for consideration on the summary judgment motion was Plaintiffs Exhibit B-6, a fax transmission cover sheet dated December 16, 2002, from Heben to Kobler and an accompanying proposed Real Estate Purchase Agreement. The cover sheet provided, in part: "Enclosed is a new Real Estate Purchase Agreement with no real estate commission being charged and the buyer paying all the closing costs."
 {¶ 16} Heben asserted in his affidavit in support of the motion for summary judgment that "[a]t no time during the negotiations did I tell Riedel-Kobler that she *Page 6 
would not be contractually obligated to pay her real estate broker, or even discuss the issue."
 {¶ 17} Kobler signed the proposed contract on December 17, 2002. The sale was concluded in December 2002, after the interests of the Karl Riedel Trust and Anna S. Riedel were added to the transaction.
 {¶ 18} Appellate courts review judgments granting motions for summary judgment de novo; that is, they apply the same standard for summary judgment as the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 19} "* * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.* * *"
 {¶ 20} Summary judgment is proper where the moving party demonstrates: "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. *Page 7 
 {¶ 21} Material facts, for purposes of motions for summary judgment, are facts that "that would affect the outcome of the suit under the applicable substantive law. Needham v. Provident Bank (1999),110 Ohio App.3d 817, 826, 675 N.E.2d 514, 519-520, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510,91 L.Ed.2d 202, 211-212." Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304.
 {¶ 22} Where a motion for summary judgment is made and supported by appropriate evidence showing the absence of a dispute of material fact, the burden shifts to the opposing party to present evidence showing the existence of a genuine issue of fact for trial: "* * * an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ. R. 56(E).
 Tortious Interference with Contract {¶ 23} In Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, the Ohio Supreme Court approved the analysis of Restatement of the Law 2d, Torts (1979), Section 766 for liability based upon tortious interference with contract. Kenty, 72 Ohio St.3d at 418-419; Fred SiegelCo., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 176. The Ohio Supreme Court has summarized the elements of the tort: *Page 8 
 {¶ 24} "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. (Kenty v. Transamerica Premium Ins. Co. [1995],72 Ohio St.3d 415, 650 N.E.2d 863, paragraph two of the syllabus, affirmed and followed.)" Fred Siegel Co., L.P.A. v. Arter Hadden, paragraph one of syllabus.
 {¶ 25} As to the first element, appellees assert that appellant George Scheid has no tortious interference with contract claim arising out of the nonpayment of the real estate commission on the sale to Abell. Under R.C. 4735.21, actions for nonpayment of real estate commissions can only be brought by or in the name of a licensed real estate broker. Licensed real estate agents may assert an action against the broker under whom they are licensed for commissions, alone.
 {¶ 26} The trial court agreed, but also concluded that "[t]his issue is non-dispositive and academic, in any event, because Rockport is also a party Plaintiff." We agree with the trial court in both respects. Scheid is not a proper party to this case. Rockport's claim for tortious interference with contract, however, extends to include his claim. Appellants' assignment of error is not well-taken as to the claims of appellant George Scheid.
 {¶ 27} Appellees also argue that there is no evidence of involvement of the escrow agent, National Title Agency, Inc., in procuring the contract breach by Kobler. Under Kenty and the Restatement, intentional procurement of the contract breach is a necessary *Page 9 
element of a claim for tortious interference with contract. Under the undisputed facts, National Title was not involved in negotiations with Kobler. It acted as an escrow agent after Kobler entered into the contract to sell the property to Abell. Accordingly, we conclude that the trial court did not err when it granted National Title summary judgment on the tortious interference with contract claim. Appellants' assignment of error is not well-taken as to the claims against National Title Agency, Inc.
 {¶ 28} There remains the tortious interference with contract claim of Rockport against Heben and against HotHomesOhio.com. The trial court concluded that the key issue on this claim was "whether Heben intentionally procured breach of the obligation of Kobler to pay Rockport a commission (which obligation extended beyond the expiration of the listing agreement since Abell was procured * * * prior to its termination)." The parties have focused their arguments to this element in their arguments both in the trial court and on appeal. Construing the facts most favorably to Rockport, we disagree, however, with the trial court's conclusion that there is no dispute of material fact on the issue of procurement of the breach of the listing contract.
 {¶ 29} Lutzko and Heben dispute whether Lutzko withdrew or abandoned the listing contract or waived any entitlement to commission. Appellees also argue appellants are foreclosed from arguing that they procured the breach of the listing contract. They assert that Lutzko's own deposition testimony discloses that Kobler had no intention of paying a commission. They claim that Lutzko admitted at deposition that Kobler had indicated an unwillingness to pay a real estate commission during discussions *Page 10 
of prior offers to purchase the property. To the extent that Lutzko contends otherwise in his affidavit, appellees claim the affidavit is inconsistent with prior deposition testimony and may not be considered.
 {¶ 30} A party opposing a motion for summary judgment "may not defeat a motion for summary judgment by creating an issue of fact by filing, without explanation, an affidavit that contradicts an earlier deposition." Mack v. Nationwide Mutual Fire Ins. Co., 6th Dist. No. L-04-1180, 2005-Ohio-2746, ¶ 23; accord Linder v. American National Ins.Co., 155 Ohio App.3d 30, 2003-Ohio-5394, ¶ 14-15.
 {¶ 31} The trial court summarized Lutzko's deposition testimony as indicating that Kobler had told Lutzko previously that she was not going to pay a commission and sell the property at a $300,000 purchase price. The trial court concluded that this was evidence that the seller was "predisposed" not to pay a commission at a $300,000 sale price. However, Kobler had refused the earlier offer. We do not find that Lutzko's deposition testimony is inconsistent with the contention that appellees Heben and HotHomesOhio.com procured a breach of the listing contract through a sale at $300,000 without payment of commission.
 {¶ 32} Accepting Lutzko's contentions as true, Heben's representations to Kobler in proposing the new sale contract and the change of terms are significant. The proposal removed a contract provision (contained in the proposal that was rejected four days before) that required payment of a real estate commission to Rockport, by name. In proposing the new contract, Heben wrote: "Enclosed is a new Real Estate Purchase *Page 11 
Agreement with no real estate commission being charged and the buyer paying all the closing costs."
 {¶ 33} The change in contract language and the representation that no real estate commission was being charged for the sale could reasonably be interpreted by a trier of fact as an intended inducement by Heben for Kobler to sell the property without payment of the real estate commission to Rockport. Under the facts, Heben had knowledge that Rockport was owed a commission for such a sale under the listing contract.
 {¶ 34} The "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. DeHass (1967),10 Ohio St.2d 230 at paragraph one of syllabus. Accordingly, we conclude the trial court erred in granting the motion for summary judgment of appellees Heben and HotHomesOhio.com on Rockport's claims for tortious interference with contract. Disputes of material fact make summary judgment unavailable in this case. Appellants' assignment of error is found well-taken as to the claims of appellant Rockport Realty Investments, Inc. against appellees Edward J. Heben, Jr. and HotHomesOhio.com for tortious interference with contract.
 {¶ 35} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part, in accordance with this decision. The case is remanded to the Erie County Court of Common Pleas for further proceedings consistent with this decision. Appellees Edward J. Heben, Jr. and HotHomesOhio.com are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the *Page 12 
clerk's expense incurred in the preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] Chad Abell was a "straw buyer." According to Heben, the true purchaser was James T. Murray, who wished to keep his interest in purchasing the property unknown.
[2] Heben testified that he may have received a copy of the listing agreement from Lutzko. *Page 1