[Cite as *Olmstead v. Forsthoefel*, 2013-Ohio-220.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

DAKOTA OLMSTEAD, BY AND
THROUGH HIS MOTHER,
SHANNON OLMSTEAD, ET AL.,

        CASE NO.  10-12-08

    PLAINTIFFS-APPELLANTS,

    v.

JUDY R. FORSTHOEFEL, ET AL.,        O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Mercer County Common Pleas Court
Trial Court No. 11-CIV-027

**Judgment Affirmed**

Date of Decision:   January 28, 2013

APPEARANCES:

    *Edward C. Yim*  for Appellants

    *Robert B. Fitzgerald*   for Appellees, Doug & Judy Forsthoefel

    *Robert J. Byrne*  for Appellee, ODJFS

    *Shannon George*   for Appellee, Ohio Mutual Ins. Group

**WILLAMOWSKI, J**.

{¶1} Plaintiffs-Appellants, Dakota Olmstead, a minor, and his mother, Shannon Olmstead ("the Mother"), appeal the judgment of the Mercer County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees, Judy and Doug Forsthoefel, on Appellants' claims for injuries Dakota received when the Appellees' dog bit Dakota. On appeal, Appellants claim that the trial court erred in granting summary judgment because they claim that there were genuine issues of material fact as to whether Dakota was teasing or tormenting the dog, and they also claim that he was not capable of teasing or tormenting a dog as a matter of law because of his "tender years." For the reasons set forth below, the judgment is affirmed.

{¶2} On September 30, 2010, Dakota (who was born in December 2001) and his twin brother were removed from the custody of their mother and placed in the temporary custody of the Montgomery County Department of Job & Family Services. The Appellees were going to be the boys' foster parents for a period of time. Dakota appeared to adjust to his new home that evening and he was introduced to the family dog, Shadow. Dakota had the opportunity to pet Shadow, who was a four-year old female Labrador-terrier mix weighing around twenty-some pounds.

{¶3} The following morning, Judy Forsthoefel was outside hanging clothes and Dakota was playing nearby. Judy turned around when she heard Dakota crying, and saw that he was bleeding. Shadow had apparently bitten Dakota on the face, necessitating a trip to the nearby ER, and then to Dayton Children's Medical Center. Dakota received stitches on the bridge of his nose and the corner of his lip. The stitches were subsequently removed and, although scars remain, Dakota did not indicate that the injuries caused him any further problems. (Dakota 8/10/11 Dep. p. 18)

{¶4} On February 16, 2011, Dakota, by and through his Mother, filed a complaint against the Appellees for personal injuries, with a jury demand, alleging a violation of R.C. 955.28 and common law negligence claims.[1] Appellants sought damages in excess of $25,000 for severe and permanent injuries; physical and emotional pain and suffering; medical bills and out-of-pocket expenses; and the Mother's loss of services/companionship/consortium of her son as well as her own emotional pain and suffering.

{¶5} On September 6, 2011, Appellees filed a motion for summary judgment. Although R.C. 955.28 imposes strict liability upon the owner of a dog for the damages or injuries it causes, they claimed that the exception contained in

---

[1] Plaintiffs' First Amended Complaint was subsequently filed on April 18, 2011. Other named Defendants, who are not involved in this appeal, were the Ohio Department of Job and Family Services, Montgomery County Children Services, and Jane and John Does (any persons employed by Montgomery County Children Services).

subsection B was applicable. The statute provides that there is no liability to persons injured if they were on the property of the dog's owner and they were "teasing, tormenting, or abusing" the dog. R.C. 955.28(B). Appellees represented that Dakota admitted to pulling the dog's ears before he was bitten. Appellees asserted that Dakota had also admitted he was mad, angry and upset about being separated from his Mother and that he took it out on the dog.

{¶6} Furthermore, Appellees submitted that Appellants' common law complaint for negligence must also fail because there was no evidence that the dog was vicious. Appellees had owned the dog for four years at the time of the incident and it had never harmed anyone before this one, isolated incident. Appellees had five children of their own; Judy regularly babysat for preschoolers in her home; and they had hosted other foster children. They constantly had children in the home around Shadow and they maintained that the dog had never previously exhibited any vicious tendencies towards anyone. Appellees contend that there was no evidence to support the allegation that Appellees knew or should have known that the dog had any vicious propensities. Appellees supported their motion with affidavits and with the depositions of Dakota, his Mother, and Judy Forsthoefel.

{¶7} Appellants' response to the motion for summary judgment claimed that Dakota was bitten on the face "as he was petting the foster family's dog and

-4-

holding the dog's ears." (Plaintiff's 9/30/2011 Response) Appellants assert that Dakota was not "teasing" or "tormenting" the dog as a matter of law. And, they maintain that whether Dakota's actions amounted to teasing or tormenting was an issue of fact for a jury, and therefore, summary judgment was not proper. The response was accompanied by the affidavits of Dakota and his Mother alleging that Dakota was merely "holding" the dog's ears.

{¶8} Appellees filed a reply to Plaintiffs' response to the motion for summary judgment, claiming that the affidavits claiming that Dakota was merely "petting and holding the dog's ears" were inconsistent with the prior deposition testimony of Dakota and his Mother and could not be utilized to defeat summary judgment by attempting to create an issue of fact with a contradictory affidavit. *Citing to Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394 (1st Dist.).

{¶9} After reviewing the parties' briefs and considering the admissible Civ.R. 56 evidence, the trial court filed its judgment entry on February 3, 2012, finding that Appellees were entitled to summary judgment on both counts. The Appellants had offered no evidence in support of the common law negligence claim, and therefore, Appellees were entitled to judgment as a matter of law on that count.

{¶10} As to the statutory claim, the trial court ruled that the Appellants' affidavits, to the extent that they contradicted their previous deposition testimony, could not be considered by the court.[2] Furthermore, the Mother's statement in her affidavit concerning what Dakota had allegedly told her was hearsay and not admissible. The trial court then held that "reasonable minds can only conclude that Dakota was pulling the ears of Forsthoefels' dog when the dog bit him in the face. Furthermore the court finds reasonable minds could only conclude that by pulling the ears of the Forsthoefels' dog, Dakota was teasing, tormenting, or abusing a dog." (02/03/2012 J.E. p. 4)

{¶11} It is from this judgment that Appellants bring this appeal, raising the following assignment of error for our review.

### Assignment of Error

**The trial court erred in granting summary judgment on Appellant's statutory claim under O.R.C. 955.28.**

{¶12} On appeal, Appellants challenge the trial court's decision granting summary judgment on their strict liability claim under R.C. 955.28. They argue that what constitutes "teasing or tormenting" is an issue of fact that is for the jury and is not appropriately decided by a trial court on summary judgment. They also contend that there is a factual issue as to whether Dakota's actions could constitute

---

[2] Appellants do not contest this decision on appeal.

-6-

"teasing or tormenting," given that he was "near the tender age at which it is unlikely his injuries are the result of his own conduct." (Appellants' Brief, p. 13)

{¶13} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 2000–Ohio–186. Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996–Ohio–336.

{¶14} "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Turner v. Turner*, 67 Ohio St.3d 337, 340, 1993-Ohio-176, quoting *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Although the court is not to engage in weighing of the evidence, to survive summary judgment a party must produce more than a scintilla of evidence in support of its position. *Schmitz v. Bob Evans Farms, Inc.*, 120 Ohio App.3d 264, 268 (8th Dist.1997). Ultimately, the proper inquiry is whether the state of the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving

party. Civ.R. 56(C); *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584 ¶ 29.

{¶15} R.C. 955.28, the statute concerning dog bites, states in pertinent part that:

> (B) The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, * * * was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

For purposes of the exception to dog bite statute, "teasing" has been defined to mean "to annoy or to trouble or to worry persistently, to be troublesome, or to pester." *Quellos v. Quellos*, 96 Ohio App.3d 31, 40 (8th Dist.1994); *Ramsey v. King*, 14 Ohio App.3d 138, 140 (12th Dist.1984). "Tormenting" is a greater annoyance and implies some torture or pain, and "abusing" is mistreatment which includes some physical injury or pain to animal. *Id.*

{¶16} The question as to whether a plaintiff's actions may constitute "teasing or tormenting" often involves a question of fact that should be decided by a jury. However, based upon the facts in this case, we find that reasonable minds cannot differ in finding that the dog's ears were pulled hard enough to annoy the animal and elicit a reaction. The evidence is very clear that on several occasions Dakota admitted that he pulled the dog's ears.

**{¶17}** In Dakota's deposition, he acknowledged that when he was removed from his Mother, it was a "bad day" and he was "upset." (Dakota Dep. 08/10/11 p. 20). Dakota provided the following answers when questioned.

Q. Sometimes when you get upset, do you get angry?

A. Yeah

Q. Sometimes when you get angry, when you were upset that day, sometimes you do things you're not supposed to do?

A. Yeah.

Q. Is that what happened that day with the dog?

A. Yeah.

Q. You pulled his ears, didn't you?

A. I think so, yeah. I guess.

Q. You know you're not supposed to do that, don't you?

A. Yeah.

(Id., p. 20-21) Contrary to Appellees' attempts to interject uncertainty into this matter by taking the child's use of the words "I think so" and "I guess" out of context, it is clear from reviewing the entire dialogue that Dakota did not have any uncertainty about what had occurred, but that he was merely reluctantly acknowledging that he had done something wrong.

{¶18} In Judy Forsthoefel's deposition, she admitted that she did not see what had happened because she had her back to Dakota and the dog while hanging clothes. However, she related what Dakota told her while they were riding to the hospital.

> Q.   In the car ride over to the hospital, did Dakota describe for you what happened or did he talk to you at all?
>
> A.   He said he was playing with her, said he was pulling at her ears.

(Judy Forsthoefel's Dep. 08/10/11, p. 29) When asked what happened when they arrived at the hospital, Judy described how the hospital personnel asked what happened.

> Q.   Okay. So what questions did they ask him then?
>
> A.   I don't recall other than I'm sure they asked what happened.
>
> Q.   Okay. Did you hear any of Dakota's responses?
>
> A.   He said he was pulling at her ears.

(*Id.*, p. 47)

{¶19} The Mother confirmed the information that was in the hospital report in her deposition. The Mother was shown Defendants' Exhibit B, which was the "Provider's Notes" from Children's Medical Center of Dayton, made by Physician's Assistant Darren Jay, and signed by Dr. John Badcock.

> Q.   It says how this happened, doesn't it?

A.   Yes.

Q.   * * * It says that this happened at foster mom's [] house and he – referring to Dakota – pulled the ears and a mid-size dog bit him on the face.  That is what it says, doesn't it?

A.   Yes.

(Shannon Olmstead Dep. 08/10/11, p. 66; Defendants' Exhibit B)

{¶20} The uncontroverted facts in this case are distinguishable from the cases cited by Appellees where summary judgment was inappropriate because there was uncertainty concerning what had actually happened.  For example, in *Quellos v. Quellos*, *supra*, there was conflicting evidence as to whether or not the injured eleven-year old child was standing between the dog and its food immediately before the incident, and the testimony of the child indicated that she did not remember what occurred.  *See, also*, *Ramsey v. King*, *supra* (no one observed what had happened and the three-year old victim was too young to testify).

{¶21} Furthermore, we do not find that the "tender years" defense is applicable in this case.  Courts have held that sometimes a child is too young to be responsible for his or her actions.  For example, in *Ramsey v. King*, the Twelfth District Court of Appeals held that a three-year old was incapable of "teasing, tormenting, or abusing" an animal as a matter of law.

> We cannot say where the line of demarcation occurs, with respect to the ability of a child to tease, torment, or abuse, within the meaning of R.C. 955.28, but we hold as a matter of law, that a three-year-old child is incapable of such conduct. While a child may be capable of such conduct at the age of five, six, or seven, it would seem axiomatic that there is some age, in infancy, where we cannot attribute the ability to tease, torment, or abuse to a child.

*Ramsey*, 14 Ohio App.3d at 244.

{¶22} The court in *Ramsey* acknowledged that it may not be possible to set a bright-line of demarcation as to exactly what age would constitute "tender years" in all cases. Although a three-year old would be absolved of such responsibility as a matter of law, the court acknowledged that a child of "five, six, or seven" might be old enough to be held responsible for teasing or tormenting an animal. In this case, Dakota was far older than any of the ages mentioned in any cases cited by Appellants. He was nearly nine-years old at the time of the incident, and he acknowledged in his deposition that *he knew* that he should not pull a dog's ears. His behavior cannot be excused on the basis of "tender years."

{¶23} Based on the above, we find that the uncontroverted evidence in this case is so one-sided that reasonable minds could only conclude that Dakota was pulling the dog's ears in such a manner as to annoy the dog at the time he was bitten. Therefore, such "teasing" behavior entitles Appellees to summary judgment as a matter of law. Appellants' assignment of error is overruled.

**{¶24}** Having found no error prejudicial to the Appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**