[Cite as *Deffren v. Johnson*, 2021-Ohio-817.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD DEFFREN, | : | APPEAL NOS. C-200176 |
| | | C-200183 |
| and | : | TRIAL NO. A-1800227 |
| DEFFREN MACHINE TOOL SERVICE, INC. | : | *O P I N I O N.* |
| | : | |
| Plaintiffs-Appellees/Cross-Appellants, | : | |
| | : | |
| vs. | : | |
| | : | |
| DONNA JOHNSON, | : | |
| KATHY POPP, | : | |
| and | : | |
| BRIAN JOHNSON, | : | |
| Defendants-Appellants/Cross-Appellees. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  March 17, 2021

*Jeffrey A. Burd*, for Plaintiffs-Appellees/Cross-Appellants,

*Robin D. Miller, Ulmer & Berne LLP,* for Defendants-Appellants/Cross-Appellees.

**BERGERON, Presiding Judge.**

{¶1}    An asset purchase agreement to sell the assets of a family-run business forms the centerpiece of this appeal.  Long after the transaction (and the buyer's hiring some of the seller's family), the parties' relationship soured, with the buyer alleging a pilfering of assets.  The seller (the sole shareholder of the business), however, had passed away by this point, and he was the only signatory to the agreement.  Confronted with this obstacle, the buyer accordingly tried to hold both the seller's wife liable for unjust enrichment and her son and daughter liable for breaching their employment agreements.  After a bench trial, the court sided with the buyer, but we are compelled to reverse.  The purchase agreement governed the sale of the assets, and the buyer cannot skirt that agreement and hold the seller's wife accountable on an unjust enrichment theory on these facts because the buyer never conferred a benefit upon her.  Nor did he establish a breach of any employment agreement.  We accordingly sustain the relevant assignments of error.

I.

{¶2}    In 2012, plaintiff-appellee Richard Deffren purchased the assets of Akro Tool Company (a family-run business), from its sole owner, Kenneth Johnson. Kenneth's wife, Donna[1], worked as the company's office manager, responsible for keeping the books, processing customer payments, and managing payroll.  Their two children—Kathy and Bryan—were also involved in varying roles.  Consequently, as part of the sale, Mr. Deffren hired Kathy and Bryan to continue working in the business—Kathy as the new office manager and Bryan in an unspecified capacity. Mr. Deffren also briefly hired Donna to show Kathy the ropes on how to run the basic

---

[1] We will use first names to avoid confusion.

2

accounting functions. Kathy and Bryan worked for Mr. Deffren for five years or so until conflict developed between the parties. In 2018, Mr. Deffren sued all four family members, alleging a misappropriation of company funds. More specifically, Mr. Deffren targeted Kenneth and Donna with respect to accounts receivables that he believed should have been transferred pursuant to the Asset Purchase Agreement (the "Agreement"), and he sued Kathy and Bryan to recover overpayment of Bryan's wages.

{¶3} Mr. Deffren's claims against Kenneth and Donna focused on accounts receivables that came in immediately after closing. Donna deposited $43,631.61 in customer payments, for work done *prior to* closing, into Akro's account instead of turning those amounts over to Mr. Deffren (this includes a late-arriving rebate check from Duke Energy). After Akro's dissolution, those funds were transferred from Akro's bank account into a joint account owned by Kenneth and Donna, because Kenneth, as sole shareholder, had the rights to any assets not transferred to Mr. Deffren. Donna recalled that the parties had discussed this arrangement at the time of the transaction and had agreed that these accounts receivables belonged to Akro. But Mr. Deffren begged to differ, insisting that the Agreement dictated that all of Akro's accounts receivables belonged to him.

{¶4} Soon after Mr. Deffren filed this suit, however, Kenneth passed away. And the trial court ultimately dismissed all claims against Kenneth (and his estate) because Mr. Deffren failed to properly present an estate claim pursuant to R.C. 2117.06. That statutory provision requires that any creditor of an estate must present its claims within six months (with certain exceptions not relevant here), otherwise the claims will be time-barred both against the estate and any beneficiaries

of the estate. Mr. Deffren does not appeal that ruling, so we have no occasion to reconsider any claims against Kenneth.

{¶5} With Kenneth out of the litigation picture, Mr. Deffren continued the suit against Donna, seeking recovery under several theories, including breach of the Agreement, breach of an employment contract, unjust enrichment, theft, fraud, and conspiracy. After a bench trial, the court entered judgment in Donna's favor on all counts except one—the unjust enrichment claim. The trial court held that Mr. Deffren could not recover for breach of the Agreement because Donna was not a party to that agreement, nor did she have any ownership stake in Akro. It also refused to apply any type of "piercing the corporate veil" theory that might have collapsed Akro's corporate form. Nevertheless, the trial court concluded that the Agreement dictated that Akro's accounts receivables belonged to Mr. Deffren and that it would therefore be unjust for Donna to now retain those funds. Mr. Deffren cross-appealed only two of the adverse decisions regarding Donna, and therefore, the appeal with respect to her is confined to theories of unjust enrichment and breach of an employment contract.

{¶6} As to the claims against the children, Mr. Deffren sought to recover overpayments of Bryan's wages that occurred in 2015 and 2017. In 2015, Kathy overpaid Bryan $4,032 for vacation time, 192 hours more than allotted. And in 2017, she overpaid Bryan $2,000 in carry-over vacation time and another $2,000 due to an inadvertent clerical error. Mr. Deffren presented nearly all the same theories of recovery against Kathy and Bryan as he framed against Donna. And again, the trial court similarly dismissed all of the claims except one—breach of an employment contract. Although no written contract existed, the court deemed Kathy and Bryan

4

subject to implied employment contracts and characterized the overpayments as a bad-faith derogation of that implied agreement.

{¶7} Donna, Kathy, and Bryan (the "Johnson Family") bring three assignments of error in their appeal: (1) that Mr. Deffren's claim against Donna was time-barred; (2) that Mr. Deffren never purchased Akro's accounts receivables; and (3) that Kathy and Bryan were never subject to implied employment contracts. Mr. Deffren also offers three assignments of error in his cross-appeal, claiming: (1) that the court should have awarded prejudgment interest; (2) that Donna was also subject to an employment contract; and (3) that the court miscalculated Kathy's damages. Ultimately, we conclude that the trial court erred in entering judgments against the Johnson Family and reverse. We accordingly sustain the Johnson Family's first and third assignments of error, while dismissing their second as moot. We also overrule Mr. Deffren's three cross-assignments of error.

II.

{¶8} Although the trial court made various factual findings after the trial, the parties don't meaningfully challenge any of them. Instead, they frame legal challenges to the given set of facts in this appeal, which implicates de novo review. *See Bowling v. Stafford & Stafford Co., L.P.A.*, 1st Dist. Hamilton No. C-090565, 2010-Ohio-2769, ¶ 8 ("For purely legal questions, the appellate court applies a de novo standard of review.").

{¶9} In the Johnson Family's first assignment of error, Donna characterizes Mr. Deffren's claim as essentially a claim against Kenneth (really, his estate), which should be time-barred at this point, and more broadly attacks the viability of any unjust enrichment claim. Pointing to the language of R.C. 2117.06(C), she insists

that the six month time bar should resolve this case: "a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties * * * ." We would be inclined to agree with Donna if Mr. Deffren were pursuing Kenneth, but he has (at this point) abandoned any such theories. The unjust enrichment claim is not against Kenneth or his estate, it is against *her*. Thus, the legitimacy of this claim must rise or fall on its own, regardless of the time bar of R.C. 2117.06(C).

{¶10} Nevertheless, we agree with Donna's related argument that Mr. Deffren's unjust enrichment theory is fatally flawed. The doctrine of unjust enrichment provides that "a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party." *In re Estate of Popov*, 4th Dist. Lawrence No. 02CA26, 2003-Ohio-4556, ¶ 26; *see Estate of Neal v. White*, 1st Dist. Hamilton No. C-180579, 2019-Ohio-4280, ¶ 9 ("The elements of a quasi-contract are (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of a benefit by the defendant under circumstances where it would be unjust to do so without payment of its value."). Unjust enrichment, of course, sounds in equity, and it is generally only available in the absence of an enforceable contract. *See Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton No. C-810032, 1981 WL 10160, *1 (Dec. 16, 1981) ("It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact."). Furthermore, "[a]s a general rule, when services are performed under an express contract, legal action is confined to the parties to the contract." *Nationwide Heating*

*& Cooling, Inc. v. K & C Const., Inc.*, 10th Dist. Franklin No. 87AP-129, 1987 WL 16802, *2 (Sept. 10, 1987). "Consequently, third-persons, even if benefitted by the work, cannot be sued * * * on unjust enrichment to pay for the benefit, because an implied contract does not arise against the one benefitted by virtue of a special contract with other persons." *Id.*

{¶11} That is not to say that a claim for unjust enrichment can never be brought against a third party to a contract. "Circumstances may exist to support an unjust enrichment claim against a noncontracting third-party who benefits from the uncompensated work of one of the parties to the contract." *Grdn. Technology, Inc. v. Chelm Properties, Inc.*, 8th Dist. Cuyahoga No. 80166, 2002-Ohio-4893, ¶ 10, quoting *Nationwide Heating* at *2. But such circumstances are limited, typically arising where a subcontractor sues a property owner for payment not received from a general contractor. *See Steel Quest, Inc. v. City Mark Const. Services, Inc.*, 1st Dist. Hamilton No. C-960994, 1997 WL 674614, *1 (Oct. 31, 1997) ("[T]his court has held that a subcontractor may pursue a claim of unjust enrichment against a property owner * * *," provided the owner has not paid the contractor in full); *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 861 (6th Cir.2002) (holding that sub-agent could recover unpaid leasing commissions from landowner because landowner had not paid the primary agent).

{¶12} We find, as a matter of law, that an unjust enrichment claim is not cognizable against Donna on the facts of this case. As a threshold matter, she was a stranger to the contractual relationship between Kenneth and Mr. Deffren embodied in the Agreement. The Agreement imposed no duties or obligations upon her. If Kenneth breached the Agreement by capturing the receivables at issue (and we

7

assume, for sake of argument, that he did), Mr. Deffren's remedy lies against Kenneth, or now his estate. Mr. Deffren cannot simply resort to unjust enrichment against Donna after failing to successfully bring his contract claim against Kenneth. *See, e.g., Donald Harris Law Firm v. Dwight-Killian*, 166 Ohio App.3d 786, 2006-Ohio-2347, 853 N.E.2d 364, ¶ 14 (6th Dist.) ("Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment."). Of course, we can imagine various theories by which Mr. Deffren could reach Donna here (such as fraud, theft, or conspiracy), but the facts did not validate any of those, as the trial court recognized.

{¶13} Moreover, when we consider the elements of unjust enrichment, we fail to see how Mr. Deffren can even get past the first element: "a benefit conferred by a plaintiff upon a defendant." *Estate of Neal*, 1st Dist. Hamilton No. C-180579, 2019-Ohio-4280, at ¶ 9. Mr. Deffren conferred no benefit on Donna at all. To the contrary, with respect to the receivables at issue here, several Akro customers tendered payment to Akro. Neither Mr. Deffren nor Donna sit on either side of that equation. True, Akro eventually dissolved and turned those funds over to Kenneth (as sole shareholder), and those funds were eventually placed in a joint bank account with Donna, but such facts are too slender a reed on which to construct an unjust enrichment claim. By that logic, any downstream recipient of funds would risk liability for unjust enrichment. We are aware of no caselaw, and Mr. Deffren has pointed us to none, that would enable an unjust enrichment claim to succeed under such circumstances. As we emphasized above, that does not mean that a party in Mr. Deffren's situation is foreclosed from all remedies—but he simply failed to

substantiate any of those alternative theories on this record (nor does he question them in this appeal).

{¶14} At the end of the day, Mr. Deffren's unjust enrichment claim against Donna is akin to the proverbial square peg in a round hole—it simply doesn't fit. We thus sustain the first assignment of error as modified to reflect the failure of the unjust enrichment claim as a matter of law.

III.

{¶15} The Johnson Family's third assignment of error and Mr. Deffren's second cross-assignment of error both relate to whether the Johnson Family breached any employment contracts. While the trial court concluded that Donna did not have an employment contract, it ruled that Kathy and Bryan *were* subject to implied employment agreements and that they ran afoul of those contracts' corresponding duties of good faith. Kathy and Bryan portray the trial court's good-faith analysis as fundamentally flawed because an employment contract never existed in the first place. Mr. Deffren, for his part, maintains that the trial court did not go far enough and should have found Donna subject to an employment agreement.

{¶16} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). And the " '[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration * * *, a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik* at ¶ 16, quoting

9

*Perlmuter Printing Co.* at 414. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.*

{¶17} "Ohio recognizes three types of contracts: express, implied in fact, and implied in law (or quasi-contract)." *Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, ¶ 18 (1st Dist.). Here, the trial court found that Kathy and Bryan were subject to agreements implied in fact. As the name suggests, an implied-in-fact contract contains no express provision defining its terms. Instead, "the court must construe the facts and circumstances surrounding the offer and acceptance to determine the terms of the agreement." *Id.*

{¶18} While "[t]he presumption is that all employment is at will," *Reasoner v. Bill Woeste Chevrolet, Inc.*, 134 Ohio App.3d 196, 198, 730 N.E.2d 992 (1st Dist.1999), that presumption can be overcome by the existence of an express or implied contract. *Id.* at 200; *see Lunsford v. Sterilite of Ohio, L.L.C.*, Slip Opinion No. 2020-Ohio-4193, ¶ 26 (noting that "this court has recognized other exceptions to the at-will-employment doctrine, including * * * breach of an implied contract."). Thus, "[i]n certain contexts, evidence of customs, company policies, employee handbooks, and oral representations may be used to establish the existence of an implied employment contract or an implied term of that contract." *Fennessey v. Mt. Carmel Health Sys., Inc.*, 10th Dist. Franklin No. 08AP-983, 2009-Ohio-3750, ¶ 8, citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 101, 483 N.E.2d 150 (1985), paragraph two of the syllabus; *see Alexander v. Columbus State Community College*, 2015-Ohio-2170, 35 N.E.3d 949, ¶ 19 (10th Dist.) ("Employer policies and oral representations can constitute evidence of an implied employment contract removing a plaintiff from a set of at-will employees.").

10

{¶19} "There is, however, a heavy burden on the party relying on an implied contract to 'demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration and mutual assent.' " *Sagonowsky v. The Andersons, Inc.*, 6th Dist. Lucas No. L-03-1168, 2005-Ohio-326, ¶ 14, quoting *Bowes v. Toledo Collision—Toledo Mechanical, Inc.*, 6th Dist. Lucas No. L-00-1017, 2000 WL 1161695 (Aug. 18, 2000). For example, an employee handbook cannot form the basis of an implied contract unless "both parties [] intended for the language in handbooks or manuals to be legally binding." *Smiddy v. Kinko's, Inc.*, 1st Dist. Hamilton No. C-020222, 2003-Ohio-446, ¶ 20. "As in all contracts, express or implied, both parties must intend to be bound." *Id.*

{¶20} Here, the trial court concluded that the employment handbook did not create any contractual obligations. And we agree. Indeed, the handbook expressly disavowed any binding force: "The provisions of this Employee Handbook are not intended to create contractual obligations * * * ." Beyond that, the handbook clarified that Mr. Deffren could change it on a whim, reserving the right to modify it "at any time without further notice." Moreover, the handbook specified that all employees were at-will. And where the "employee handbook specifically provided that [its employees] [were] at-will * * * * we must look to sources other than the handbook to determine if an implied contract existed." *Reasoner* at 200–01. To be sure, the handbook here contained various restrictions on vacation time and pay that Kathy and Bryan ran afoul of, but Mr. Deffren needed to find some other basis beyond the handbook to hold them accountable.

11

{¶21} Despite finding that the handbook was not contractual, the trial court nonetheless found: (1) that Kathy and Bryan were subject to implied-in-fact employment agreements; and (2) that they violated their duties of good faith and loyalty by falling short of Mr. Deffren's expectation as outlined in the handbook. It must be noted that the trial court did not specify the terms of the implied-in-fact agreement, nor did it find that Kathy or Bryan breached any of those terms. Rather, the trial court pivoted to—and solely based its finding of liability upon—the duty of good faith and loyalty.

{¶22} Based on Mr. Deffren's arguments on appeal that focus on this duty of good faith and loyalty, we need not decide whether an implied-in-fact contract existed. This is because we have recognized that "[a]n employee's duty of good faith and loyalty exists regardless of whether an employment agreement exists." *See Retirement Corp. of Am. v. Henning*, 1st Dist. Hamilton No. C-180643, 2019-Ohio-4589, ¶ 36. The common-law duty of good faith and loyalty is not, however, meant to conjure up contractual terms that the parties failed to negotiate or memorialize—it generally applies in limited contexts, such when an employee actively competes with the employer. *See id.* ("This common-law duty [of good faith and loyalty] is breached when an employee engages in competition with the employee's present employer while still employed."); *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 326, 736 N.E.2d 517 (10th Dist.1999) ("[O]rdinarily employees are considered to be in breach of their duty of loyalty if they compete with their employer."); *Staffilino Chevrolet, Inc. v. Balk*, 158 Ohio App.3d 1, 2004-Ohio-3633, 813 N.E.2d 940, ¶ 45 (7th Dist.) ("Another example of a breach [of the duty of good

faith and loyalty] is where an employee gives away company property, uses company funds as his own, and takes kickbacks.").

{¶23} Mr. Deffren essentially attempts to wield the common law duty of good faith and loyalty to transform nonbinding handbook terms into binding ones. This reasoning is circular and risks eviscerating the extant case law about employee handbooks. Mr. Deffren can't have it both ways—he can't disavow the existence of a contract by telling employees that the handbook is unenforceable, and then try to render the handbook enforceable (under the auspices of "good faith") when it suits him. He must point to facts outside of the handbook to substantiate the terms of an implied contract or he must independently establish a breach of the duty of good faith and loyalty. And we can search the record in vain for evidence of a violation of the duty of good faith and loyalty consistent with how Ohio courts apply that concept.

{¶24} Further bolstering this conclusion is the trial court's assessment of the evidence, where it specifically found that the "evidence demonstrate[s] that the overpayments were accidental or inadvertent and were not done with an intent to deprive the rightful owner of the property." An inadvertent violation of nonbinding terms of an employment handbook does not rise to the level of the purposeful behavior required to breach an employee's duty of good faith and loyalty. *See, e.g., MNM & MAK Ent., LLC v. HIIT Fit Club, LLC*, 2019-Ohio-4017, 134 N.E.3d 242, ¶ 31 (10th Dist.) (holding that intentional misappropriation of trade secrets constituted a breach of the duty of good faith and loyalty). If innocent mistakes by employees can constitute violations of the duty of good faith and loyalty, our court system would be flooded with such litigation. Much like the claims against Donna, Mr. Deffren

13

potentially had other, more legally-appropriate paths to pursue these alleged transgressions against Kathy and Bryan, but the trial court ruled against him on those grounds and he has not appealed.

{¶25} As a result, we find that the trial court erred as a matter of law in holding that Kathy and Bryan violated some duty of good faith and loyalty. And, for much the same reasons, we accordingly agree with the trial court that Donna was not subject to an employment contract. We therefore sustain the Johnson Family's third assignment of error and overrule Mr. Deffren's second assignment of error.

IV.

{¶26} Mr. Deffren presents two additional assignments of error in his cross-appeal. First, Mr. Deffren argues that the trial court erred by not awarding prejudgment interest on his judgments against the Johnson Family. Because we reverse those judgments, we overrule this assignment of error since he is not entitled to damages. Relatedly, Mr. Deffren maintains in his third assignment of error that the trial court miscalculated damages for Kathy's breach of her employment contract. Because we have concluded that no employment contract existed, we also overrule this assignment of error.

\*　　\*　　\*

{¶27} In light of the foregoing analysis, we sustain the Johnson Family's first assignment of error as modified and their third assignments of error, and find their second assignment of error moot. We also overrule Mr. Deffren's three assignments of error on his cross-appeal. We therefore reverse the trial court's judgment in part, affirm in part, and remand with instructions to enter judgment in favor of the Johnson Family.

14

Judgment reversed in part, affirmed in part, and cause remanded.

**CROUSE** and **WINKLER, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion