[Cite as *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 2023-Ohio-1728.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| DANZIGER & DE LLANO, LLP, | : | APPEAL NO. C-220478 |
| | | TRIAL NO. A-2201568 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MORGAN VERKAMP, LLC, | : | |
| FREDERICK M. MORGAN, JR., | : | |
| and | : | |
| JENNIFER M. VERKAMP, | : | |
| Defendants-Appellees. | : | |


Civil Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: May 24. 2023


*Strauss Troy Co., LPA*, and *Robert R. Sparks*, for Plaintiff-Appellant,

*Montgomery Jonson LLP*, *George D. Jonson* and *G. Todd Hoffpauir*, for Defendants-Appellees.

**KINSLEY, Judge.**

{¶1}   This case marks the third attempt in as many jurisdictions by plaintiff-appellant Danziger & De Llano, LLP, ("D&D") to recover a share of legal fees for a client it did not actually represent.  After unsuccessfully suing in the federal courts of Pennsylvania and Texas, D&D sued both the law firm that did represent the client—Morgan Verkamp, LLC,—and its two principals, Frederick Morgan and Jennifer Verkamp (collectively "Morgan Verkamp"), in the Hamilton County Court of Common Pleas.  *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir.2020); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491 (5th Cir.2022).  Its claims included breach of contract, breach of contract implied in fact, unjust enrichment, quantum meruit, promissory estoppel, and fraudulent concealment.

{¶2}   Raising arguments that D&D's claims were barred by the applicable statutes of limitations and the applicable professional conduct rules, Morgan Verkamp moved to dismiss the complaint under Civ.R. 12(B)(6).  The trial court granted Morgan Verkamp's motion and dismissed the action.  In a single assignment of error, D&D argues that the trial court erred in dismissing its complaint.

{¶3}   For the reasons that follow, we affirm the trial court's judgment.

### Factual and Procedural Background

{¶4}   Danziger & De Llano, LLP, is a law firm located in Texas that frequently represents clients in whistleblower cases.  D&D and Rod De Llano, one of its principals, have a history of referring a specialized type of whistleblower cases known as qui tam actions to Frederick Morgan and Jennifer Verkamp.  When the referral relationship began, Morgan and Verkamp were working at Volkema Thomas, an Ohio

law firm. Later, they left that firm to open their own law practice known as Morgan Verkamp. This dispute concerns a client, Michael Epp, whom D&D referred to Morgan and Verkamp when they were attorneys at Volkema Thomas and whom Morgan Verkamp later successfully represented in a federal qui tam action in Pennsylvania.

{¶5} D&D's relationship with Morgan and Verkamp began in 2006, when D&D referred a different client in a potential qui tam action, Stacy Vanderslice, to Volkema Thomas. Morgan, Verkamp, and D&D then entered into a written fee agreement with Stacy Vanderslice. The agreement provided that Vanderslice would share 40 percent of any recovery obtained on her behalf with this team of attorneys. The attorneys agreed to allocate their share of the contingent fee by giving 33 percent to Volkema Thomas, 33 percent to D&D, and the remaining 34 percent in proportion to the hours spent on representation of Vanderslice by each firm.

{¶6} Also in 2006, D&D referred Donald Galmines, another potential qui tam relator, to Morgan. Galmines entered into a fee agreement with Volkema Thomas and D&D that was identical to the agreement used in the Vanderslice action.

{¶7} In April of 2007, Epp contacted D&D about his potential claim. Acting on behalf of D&D, De Llano responded via email to Epp stating that D&D was interested in discussing the matter further and explaining that it would be partnering with Volkema Thomas in the investigation and, if warranted, prosecution of the case. D&D also contacted Morgan regarding the Epp action.

{¶8} On April 19, 2007, De Llano, Morgan, Verkamp, and Epp participated in a conference call to discuss Epp's case. On April 23, 2017, Epp emailed D&D and Morgan with a question about how their legal fees would be paid. Morgan responded to Epp, informing him that the attorneys would not be paid if Epp did not obtain a

recovery. Morgan also informed Epp that, if a recovery was obtained, the attorney's contingent share would be disbursed from the proceeds.

{¶9} On May 21, 2007, Epp, De Llano, and Morgan participated in another conference call to discuss a draft of Epp's complaint and the parties' fee agreement. On May 30, 2007, in response to a request from Epp, Morgan sent Epp a draft fee agreement that was similar in its structure, but not the amount of fees to be paid, to the fee agreement used in the Vanderslice and Galmines actions. Morgan informed Epp that the draft agreement "does not include the details of the relationship between [De Llano's] and our firms, which will also be subject to your approval." The draft fee agreement that was sent to Epp provided that:

Each law firm has agreed to divide any recovery of attorney's fees generated from the contingent portion of the relators' share of any award (as described above) in the following manner:

____ percent (%) of the fees generated by the contingent portion of the relators' of any recovery shall be paid to Volkema Thomas, LPA.

____ percent (%) of the fees generated by the contingent portion of the relators' of any recovery shall be paid to Danziger & De Llano, P.C.

{¶10} The numerical amount of the percentage that each party was to recover was left blank. No other provision in the draft agreement described the work to be performed by D&D and Morgan Verkamp or how the firms would share fees or responsibility for Epp's case. On June 4, 2007, in response to questions from Epp about this draft agreement, Morgan wrote a letter clarifying that the contingency fee to be charged would be 40 percent of the amount the client recovered as well as attorneys' fees for attorney time and billable staff. On June 13, 2007, Epp responded

with questions unrelated to the fee agreement. After those questions, neither party heard any further from Epp for a period of time.

{¶11} In September of 2007, Epp reinitiated contact with De Llano and Morgan and expressed interest in proceeding with the case. However, Epp again ceased communication shortly thereafter.

{¶12} In January of 2008, Morgan and Verkamp left Volkema Thomas and established a new firm, Morgan Verkamp, LLC. Morgan and Verkamp entered into a separation agreement with Volkema Thomas in which they assumed responsibility for the Vanderslice, Galmines, and Epp cases and agreed to reimburse Volkema Thomas for case expenses.

{¶13} On January 13, 2008, Morgan emailed Epp and De Llano to advise them that he and Verkamp had started their own firm. The email additionally informed Epp that "As I am no longer affiliated with Volkema Thomas, the draft contract I sent you several months ago is no longer relevant. Let Rod [De Llano] and me know if we can be of further service." Epp responded to Morgan and De Llano, asking, "[A]re you interested to take over the case on the same basis as Volkema Thomas?"

{¶14} Morgan answered Epp, communicating that "Michael, we're doing the same work in the same place, and definitely remain interested in your case. The terms were ours to begin with, so while we would need to reacquaint ourselves with the case and still would need to obtain the rest of your materials for review, if we were to handle the case we would do it on the same terms."

{¶15} After this exchange of emails, D&D never heard from Epp again. D&D and Morgan Verkamp continued to work together on the Vanderslice and Galmines cases. In January of 2010, De Llano saw a press release regarding a qui tam action

that seemed to be similar to Epp's action, and he emailed Morgan inquiring whether the press release was referring to the Epp case. Morgan responded in the negative.

{¶16} In March 2010, Morgan Verkamp brought suit on Epp's behalf in the Pennsylvania federal court. More than four years after the suit was filed, the United States government intervened and settled the suit for millions of dollars, resulting in several millions in legal fees for Morgan Verkamp. *See Danziger & De Llano*, 948 F.3d at 128.

{¶17} In October of 2016, D&D learned about Epp's lawsuit, the settlement, and Morgan Verkamp's fee award. Believing that it was entitled to a share of the recovery in that action, D&D filed a discovery action in 2016, and then a complaint in 2018, against Morgan Verkamp in Pennsylvania state court. *Id.* Morgan Verkamp removed the case to federal court, where they filed a motion to dismiss the action. *Id.* The motion to dismiss was granted by the United States District Court for the Eastern District of Pennsylvania, and the Third Circuit Court of Appeals affirmed that dismissal. *Id.* at 128, 133.

{¶18} D&D subsequently filed a complaint against Morgan Verkamp in federal court in the Southern District of Texas. Morgan Verkamp again filed a motion to dismiss. *Danziger & De Llano*, 24 F.4th at 494. The motion to dismiss was granted, and that dismissal was affirmed on appeal by the Fifth Circuit Court of Appeals. *Id.*

{¶19} On May 2, 2022, D&D filed the complaint in this case. The complaint contained claims for breach of contract, breach of contract implied in fact, unjust enrichment, quantum meruit, promissory estoppel, and fraudulent concealment. It alleged that Morgan Verkamp had willfully deceived D&D by representing Epp in the action that D&D had initially referred years earlier.

{¶20} The complaint described a number of communications involving Morgan Verkamp, D&D, and Epp. For one, Morgan Verkamp resumed communication by email with Epp in 2010 regarding his claim without including D&D. This was the case even though Morgan told Epp in his January 2008 email that his new firm would take over the case on the same basis as had previously been arranged with Volkema Thomas. The complaint also referenced an email that Morgan sent to Epp in February of 2010 transmitting a draft fee contract. In that email, Morgan informed Epp that "I have not included Rod DeLlano [sic] on this contract, as we have not discussed whether you wish to retain his firm as well as ours. If you wish me to reach out to Rod to see if he wishes to participate, I will do so. Otherwise, I will work with him once the case evolves to ensure that he is reasonably compensated for the work he did for you in 2007."

{¶21} The complaint further alleged that Morgan never reached out to De Llano or ensured that he was reasonably compensated for his earlier work and that Morgan Verkamp fraudulently concealed their representation of Epp while continuing to work together with D&D on the Vanderslice and Galmines cases during the pendency of the Epp litigation.

{¶22} According to the complaint, Morgan Verkamp filed suit on behalf of Epp in a qui tam action in March of 2010 in the Eastern District of Pennsylvania and ultimately received a contingency share of the award that Epp had obtained in excess of five million dollars. D&D asserted it was entitled to approximately $2,133,333 in fees for its referral of Epp.

{¶23} Morgan Verkamp filed a Civ.R. 12(B)(6) motion to dismiss D&D's complaint. In support of the motion, Morgan Verkamp argued that the claims asserted

in the complaint were barred by the applicable statutes of limitations, D&D's claims were substantially flawed, the equitable claims were barred by laches, the Ohio and Texas Rules of Professional Conduct barred D&D's claims, and fee disputes between lawyers in different law firms cannot be litigated in court in Ohio.

{¶24} The trial court issued an entry granting the motion to dismiss. The entry stated that the motion was well taken, but it did not set forth the basis on which dismissal was granted.

### *Standard of Review*

{¶25} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Plush v. Cincinnati*, 2020-Ohio-6713, 164 N.E.3d 1056, ¶ 12 (1st Dist.). A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted tests the sufficiency of the complaint. *Thomas v. Othman*, 2017-Ohio-8449, 99 N.E.3d 1189, ¶ 18 (1st Dist.). When ruling on such a motion, the trial court is confined to the allegations in the complaint, must accept all the allegations as true, and must draw all reasonable inferences in favor of the nonmoving party. *Plush* at ¶ 12. A Civ.R. 12(B)(6) motion to dismiss should only be granted if it "appear[s] beyond a doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.*, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶26} The parties raise statute-of-limitations arguments in this appeal. Because a statute-of-limitations defense typically requires reference to materials outside the complaint, it is not generally properly raised in a Civ.R. 12(B)(6) motion. *Lyons v. Kindell*, 2015-Ohio-1709, 35 N.E.3d 7, ¶ 30 (1st Dist.). "But a Civ.R. 12(B)(6)

motion may be granted on statute-of-limitations grounds when the complaint on its face conclusively indicates that the action is time-barred." *Id.*

### Civ.R. 12(B)(6) Analysis

**{¶27}** In a single assignment of error, D&D argues that the trial court erred in granting the motion to dismiss. It contends that each claim asserted in the complaint was filed within the applicable limitations period. We discuss each claim in turn.

### 1. Breach of Contract

**{¶28}** With respect to the claim for breach of contract, D&D's complaint alleged that the parties' oral and written communications, along with their longstanding course of conduct, resulted in an enforceable agreement. The complaint specifically asserted that:

> The parties' written agreements, acts, and years-long course of dealing
> establish that their agreement included: (1) that Plaintiff and Defendant
> would work together on *qui tam* cases; (2) that Plaintiff would refer *qui
> tam* Relators to Defendants and, if litigation resulted from the referral,
> Plaintiff would be involved in such litigation as co-counsel; (3) that
> Plaintiff and Defendants would make full disclosure of all relevant facts
> to their clients or prospective clients and also make full disclosure of all
> relevant facts to each other; (4) that they would divide attorney fees with
> one-third to Plaintiff, one-third to Defendants, and one-third divided
> based upon time expended in the matter; and, (5) that Plaintiff and
> Defendants would act in accordance with the ethical requirements of the

legal profession and would not actively conceal relevant facts from each other.

**{¶29}** To establish a claim for breach of contract, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and a resulting damage or loss to the plaintiff. *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 37 (1st Dist.).

**{¶30}** D&D argues that Morgan Verkamp improperly attempted to characterize their breach of contract claim below as a claim for a breach of an oral contract, when the complaint, in fact, alleged a claim for breach of a written contract. D&D further argues that, regardless of whether the claim was for breach of an oral or written contract, the claim was filed within the applicable limitations period. We need not reach the issue of whether the claim was filed within the relevant statute of limitations, as we find that the complaint fails to allege the existence of a contract, either written or oral.[1]

**{¶31}** In order for a contract to exist, there generally must be an offer, acceptance, and consideration. *N. Side Bank & Trust Co. v. Trinity Aviation LLC*, 2020-Ohio-1470, 153 N.E.3d 889, ¶ 15 (1st Dist.). The alleged contract must also reflect the essential terms with definiteness and certainty, as there must be a meeting of the minds as to all essential terms. *Id.*; *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). To reflect a meeting of the minds, all parties to an agreement must mutually assent to the

---

[1] On appeal, D&D argues that the contract it seeks to enforce existed solely between it and Morgan Verkamp. However, the complaint appears to describe a three-party agreement between Epp, D&D, and Morgan Verkamp, and it was this alleged contract that the trial court reviewed in granting the motion to dismiss. We limit our review to the alleged three-party contract described in the complaint, given that Civ.R. 12(B)(6) tests the sufficiency of the complaint, which did not include any purported agreement that existed solely between D&D and Morgan Verkamp.

substance of the contract. *Jackson Tube Serv. v. Camaco LLC*, 2d Dist. Miami Nos. 2012 CA 19 and 2012 CA 25, 2013-Ohio-2344, ¶ 11, citing *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 12 (9th Dist.) (stating that a meeting of the minds occurs if "a reasonable person would find that the parties manifested a present intention to be bound to an agreement"). The parties must have a distinct and common intention that is communicated by each party to the other. *Id.*, citing *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 620, 622 N.E.2d 1093 (8th Dist.1993).

### A. The Draft Agreement and Related Emails Were Not Specific Enough to Constitute a Valid Offer

**{¶32}** D&D's complaint was less than precise in its basis for arguing the existence of a written contract. However, D&D appears to rely upon the draft agreement that Morgan sent to Epp in May of 2007 and the emails that both accompanied and came after its circulation to suggest that a written contract existed. We consider at the outset whether the draft agreement and Morgan's emails constitute a valid offer to contract. An offer must be specific enough to form the basis for a meeting of the minds. *Callander v. Callander*, 10th Dist. Franklin No. 07AP-746, 2008-Ohio-2305, ¶ 14.

**{¶33}** Under this standard, the draft agreement and Morgan's emails to Epp were insufficient to constitute a valid offer to contract because they expressly omitted key terms regarding D&D's role. First, the document failed to include the percentages of the contingent fee that each party would receive, prohibiting an adequate meeting of the minds regarding the consideration to be paid or the relationship between the two law firms. Morgan's email to Epp specifically noted as much, highlighting that the

draft agreement "does not include the details of the relationship between [De Llano's] and our firms, which will also be subject to your approval." Morgan's June 4, 2007 letter to Epp did not shed sufficient light on the matter, as it only clarified that the contingency fee would be set at 40 percent, but did not describe how that fee would be divided between the firms.

{¶34} The complaint also references an email from Epp inquiring as to whether Morgan, at his new firm, would take over the case on the same terms that Volkema Thomas had agreed to, as well as an email from Morgan stating that "if we were to handle the case we would do it on the same terms." But Morgan's email failed to set forth the referenced terms or to clarify the previously-omitted provisions regarding D&D's role and responsibility. As a result, Morgan's later email suffered from the same lack of specificity as the initial draft agreement.

{¶35} The complaint additionally asserts that Morgan sent another draft fee contract to Epp in February of 2010. But D&D was not included in that contract at all, which proposed an agreement solely between Epp and Morgan Verkamp. Thus, the February 2010 email cannot possibly form the basis of an offer to contract between Morgan Verkamp and D&D.

{¶36} Even accepting all allegations in the complaint as true and construing all inferences in D&D's favor, the writings referenced in the complaint simply fail to set forth a specific offer to contract between Morgan Verkamp and D&D to jointly represent Epp and share a contingent fee of any recovery obtained from that representation. Absent such an offer, we cannot find a valid written contract to enforce in this case.

### B. The Offer Was Withdrawn Before It Was Accepted

**{¶37}** Even if we were to find that the draft agreement and Morgan's emails about the draft agreement constituted a specific offer, a further problem with D&D's argument is that Morgan withdrew the offer prior to acceptance by either Epp or D&D. Under "traditional contract principles * * * an offer may be withdrawn at any time before it is accepted." *Ohio Title Corp. v. Pingue*, 10th Dist. Franklin No. 10AP-1010, 2012-Ohio-1370, ¶ 48.

**{¶38}** After Morgan sent Epp the draft agreement and clarified the overall contingency fee amount, the attorneys lost contact with Epp. He never agreed to the arrangement or otherwise assented to the proposed contract. Importantly, neither did D&D. Thus, even were we to interpret the draft agreement and related emails as an offer, there was no acceptance by the other parties to the contract—Epp and D&D.

**{¶39}** When Morgan left Volkema Thomas, he then emailed Epp to inform him of Morgan and Verkamp's new firm. In that email, Morgan told Epp that, as a result of the principals' change in firms, "the draft contract I sent you several months ago is no longer relevant." This statement revoked any previous offer by Morgan Verkamp to represent Epp in conjunction with D&D. Since the previous offer had not been accepted at that point, the offer could be freely revoked, which it was. *See id.*

**{¶40}** Morgan subsequently emailed Epp to suggest that Morgan Verkamp would be willing to represent him "on the same terms" as the previous draft offer. However, for the reasons already discussed, those terms were not sufficiently specific to allow a meeting of the minds with regard to D&D's role. Moreover, no party—not D&D or Epp—followed up on Morgan's suggestion of negotiating the prior draft

agreement. As a result, we find no offer and acceptance between D&D and Morgan Verkamp sufficient to form a written contract.

**{¶41}** While D&D argues that the parties' representation of Epp was to be undertaken with the same terms present in the Vanderslice and Galmines actions, the complaint fails to delineate any writing, or combination of writings, that sets forth those terms with respect to Epp and establishes an acceptance by Epp of those terms. We therefore hold that the complaint failed to establish the existence of an enforceable written contract and that the trial court did not err in dismissing this claim under Civ.R. 12(B)(6).

### C. The Complaint Did Not Describe an Oral Contract

**{¶42}** In addition to suing for breach of a written contract, D&D also advances a breach of contract theory premised on the existence of an oral contract. An oral agreement may be enforceable provided there is sufficient particularity to form a binding contract. *Kodu v. Medarametla*, 1st Dist. Hamilton No. C-160319, 2016-Ohio-8020, ¶ 9. The complaint, however, fails to identify the existence of any oral agreement between the parties regarding Epp's representation and touches only on the written communication alleged to form a contract in this case.

**{¶43}** Because, even accepting all allegations in the complaint as true, the complaint failed to establish the existence of an oral contract, it failed to state a claim upon which relief could be granted, and the trial court did not err in dismissing D&D's claim for breach of an oral contract.

### 2. Breach of a Contract Implied in Fact

{¶44} In addition to its claims for breach of written and oral contracts, D&D also alleges a breach of a contract implied in fact. The complaint contains the same allegations in support of this claim as it does for the breach of contract claim. As with the claim for breach of contract, we do not need to consider whether this claim was filed within the applicable limitations period because we find that the complaint fails to establish the existence of a contract implied in fact.

{¶45} As this court has recognized, "an implied-in-fact contract contains no express provision defining its terms." *Deffren v. Johnson*, 2021-Ohio-817, 169 N.E.3d 270, ¶ 17 (1st Dist.). Rather, "the court must construe the facts and circumstances surrounding the offer and acceptance to determine the terms of the agreement." *Id.*, quoting *Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, ¶ 18 (1st Dist.). A contract that is implied in fact "hinges upon proof of all of the elements of a contract." *Akron v. Baum*, 9th Dist. Summit No. 29882, 2021-Ohio-4150, ¶ 15. In fact, "[t]he only difference between an express contract and a contract implied in fact is one of proof. The former is proved by words, the latter by acts, conduct, and circumstances." *J.S. Keate & Co. v. Barnett's Car Wash*, 1st Dist. Hamilton No. C-920895, 1994 Ohio App. LEXIS 100, 10 (Jan. 19, 1994).

{¶46} Again, accepting all allegations in the complaint as true and construing all inferences in the favor of D&D, we hold that the complaint in this case fails to establish the existence of a valid contract implied in fact. To begin, D&D argues that its prior course of conduct in referring Vanderslice and Galmines to Morgan Verkamp and receiving a fee award for doing so establishes a contract with respect to Epp. We disagree. The fact that two other clients agreed to a shared fee arrangement between

D&D and Morgan Verkamp in their cases does not imply that all clients referred by D&D will automatically do so. In fact, the existence of blank lines in the draft fee agreement for the percentages of the contingency to be apportioned to each firm suggests an expectation that the attorneys will negotiate a personalized agreement with each client. The back-and-forth emails between Morgan and Epp and the absence of specifics with regard to D&D's role only confirm the lack of an implied contract between Morgan Verkamp and D&D as to fee splitting.

{¶47} Moreover, even if the allegations in the complaint concerning the parties' actions and the surrounding circumstances could be used to establish the terms of a contract, and we do not hold that they do, they do not establish that Epp accepted any offer of a fee agreement containing those terms from both Morgan Verkamp and D&D. Because the alleged contract concerned the joint legal representation of Epp and included a contingency fee, it could not take effect without Epp's approval. *See* Prof.Cond.R. 1.5(c)(1). We accordingly hold that, with respect to the claim for breach of a contract implied in fact, the complaint failed to set forth a claim upon which relief could be granted, and that the trial court did not err in dismissing the claim.

### 3. Unjust Enrichment

{¶48} With respect to the claim for unjust enrichment, the complaint alleged that D&D conferred a monetary benefit on Morgan and Verkamp by referring Epp's claim to them, that Morgan Verkamp knew it was receiving a monetary benefit and attempted to conceal their work on Epp's case from D&D, and that Morgan Verkamp retained monetary benefits from D&D under circumstances in which it was unjust to do so.

{¶49} A plaintiff asserting a claim for unjust enrichment must establish "that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment." *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 25.

{¶50} R.C. 2305.07 sets forth the statute of limitations for an unjust enrichment claim. *Brown v. Fukuvi USA Inc.*, 2d Dist. Montgomery No. 29294, 2022-Ohio-1608, ¶ 85. It provides that such an action shall be brought within four years after the cause of action accrued. R.C. 2305.07(A). However, the editor's notes to R.C. 2305.07 state:

> Acts 2021, SB 13, § 5 provides: "(A) For causes of action that are governed by division (A) of section 2305.07 of the Revised Code that accrued prior to the effective date of this act, the period of limitations shall be four years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever occurs first."

*See Tabbaa v. Nouraldin*, 8th Dist. Cuyahoga No. 110737, 2022-Ohio-1172, ¶ 23. As this court has held, a claim for unjust enrichment is not subject to the discovery rule for statute-of-limitations purposes. *Palm Beach Co. v. Dun and Bradstreet, Inc.*, 106 Ohio App.3d 167, 175, 665 N.E.2d 718 (1st Dist.1995).

{¶51} D&D's unjust enrichment claim accrued prior to the effective date of 2021 S.B. 13 ("S.B. 13"), which was June 16, 2021. *Tabbaa* at ¶ 23. The applicable limitations period to this claim is thus the earlier of four years from the effective date of S.B. 13, which would be June 16, 2025, or the expiration of the limitations period in

effect prior to the effective date of S.B. 13, which was six years. *Id.* at ¶ 24. Under the latter timeline, D&D's unjust enrichment claim accrued in December of 2014, when Morgan Verkamp settled Epp's qui tam action and did not share any recovery obtained with D&D. The limitations period for the claim therefore expired six years from that date, which was December of 2020. As December of 2020 is earlier than June 16, 2025, that is the period to be applied to determine if the unjust enrichment claim was timely filed. *See Tabbaa* at ¶ 23; editor's notes to R.C. 2305.07.

{**¶52**} D&D did not file its Ohio complaint until May 2, 2022. Because the limitations period for the unjust enrichment claim expired in December of 2020, well before D&D filed its Ohio complaint, the claim was not timely.

{**¶53**} In an effort to save its claim, D&D contends that the doctrine of equitable tolling applies to extend the statute of limitations. The equitable-tolling doctrine "is to be applied sparingly and only in exceptional circumstances." *Roach v. Vapor Station Columbus, Inc.*, 10th Dist. Franklin No. 21AP-511, 2022-Ohio-2106, ¶ 8. To establish entitlement to equitable tolling, a plaintiff must show that "(1) he has diligently pursued his rights, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Strother v. Columbus*, 10th Dist. Franklin No. 22AP-7, 2022-Ohio-4097, ¶ 29. Application of the doctrine of equitable tolling "is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Roach* at ¶ 8.

{**¶54**} Here, the complaint contains no evidence that D&D was intentionally misled or tricked into missing the filing deadline or that an extraordinary circumstance stood in D&D's way to prevent timely filing of the complaint. Rather, after learning that Morgan Verkamp had represented Epp and obtained a recovery,

D&D elected to file suit in two other jurisdictions prior to filing suit in Hamilton County. This was the product of calculated decision-making by D&D regarding the forum in which to file suit rather than an extraordinary circumstance that prevented D&D from timely pursuing its claim in Ohio. Given this background, we decline to apply the doctrine of equitable tolling to D&D's unjust enrichment claim.

{¶55} We accordingly hold that the trial court did not err in dismissing D&D's claim for unjust enrichment because it was filed outside of the applicable limitations period.

### 4. Quantum Meruit

{¶56} D&D also sued on a theory of quantum meruit. As set forth in the complaint, this claim contends that "in the event it is determined that there is no express or implied contract between Plaintiff and Defendants, Defendants unjustly received and retained compensation in the form of attorney fees as alleged in the complaint." The complaint further alleges that Morgan Verkamp's retention of such monetary benefits was inequitable and unjust, and that D&D was entitled to equitable relief based on a quasi-contract with defendants under the doctrine of quantum meruit.

{¶57} A claim for quantum meruit is essentially the same as a claim for unjust enrichment. *Univ. Hosp. v. Wells*, 1st Dist. Hamilton No. C-210132, 2021-Ohio-3666, ¶ 11; *Garb-Ko, Inc. v. Benderson*, 10th Dist. Franklin Nos. 12AP-430, 12AP-474, 12AP-475 and 12AP-476, 2013-Ohio-1249, ¶ 26 (recognizing that the claims of unjust enrichment and quantum meruit share the same essential elements but differ in the calculation of damages). Like the claim for unjust enrichment, D&D's claim for quantum meruit accrued in December of 2014 when Morgan Verkamp settled Epp's

qui tam action and did not share any recovery obtained with D&D. Since the complaint was filed on May 2, 2022, the claim for quantum meruit was filed outside of the applicable six-year-limitations period set forth in R.C. 2305.07.[2]

{¶58} We therefore hold that the trial court did not err in dismissing the quantum-meruit claim.

### 5. Promissory Estoppel

{¶59} D&D's complaint also contained a claim for promissory estoppel. In support of this claim, D&D's complaint relied on the same allegations that were made in support of the claim for breach of contract. It additionally alleged that Morgan Verkamp should reasonably have expected D&D to rely on its promises regarding joint representation, that D&D relied on Morgan Verkamp's promises by referring clients like Epp to Morgan Verkamp instead of to other law firms, and that Morgan Verkamp is bound by its promises to D&D.

{¶60} Like the claim for breach of contract, we need not determine whether the claim for promissory estoppel was filed within the applicable limitations period because we hold that, accepting all allegations in the complaint as true and construing all inferences in favor of D&D, the complaint failed to state a claim upon which relief could be granted with respect to this claim.

{¶61} The elements of a claim for promissory estoppel are: "1) a clear and unambiguous promise, 2) reliance by the party to whom the promise is made, 3) the reliance must be reasonable and foreseeable, and 4) the party relying on the promise

---

[2] Because the quantum meruit claim accrued prior to the effective date of S.B. 13, like the claim for unjust enrichment, the applicable limitations period for this claim is the earlier of four years from the effective date of S.B. 13, which would be June 16, 2025, or the expiration of the six-year-limitations period in effect prior to the effective date of S.B. 13. Again, as with the claim for unjust enrichment, the earlier date is the expiration of the six-year-limitation period.

must have been injured by the reliance." *Brown,* 2d Dist. Montgomery No. 29294, 2022-Ohio-1608, at ¶ 69, quoting *Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 28 (2d Dist.).

**{¶62}** Much of our previous discussion as to why the complaint failed to state a claim for breach of contract upon which relief could be granted is applicable to our analysis of the promissory estoppel claim as well. The complaint failed to establish that Epp accepted any proposed terms of representation from both Morgan Verkamp and D&D. Morgan Verkamp and D&D may have discussed terms of their joint representation of other clients and the division of any recovery, but the complaint does not establish Epp's assent to joint representation or to specific terms regarding D&D's role in the matter or share of any recovery. And, as discussed above, in the absence of approval from Epp as to Morgan Verkamp and D&D's joint representation, there was no clear and unambiguous promise from Morgan Verkamp to D&D to share any fees it obtained.

**{¶63}** We accordingly hold that the trial court did not err in dismissing the claim for promissory estoppel.

### *6. Fraudulent Concealment*

**{¶64}** The last claim asserted in D&D's complaint is that of fraudulent concealment. In support of this claim, the complaint alleged that Morgan Verkamp had a duty to disclose to D&D that it had undertaken representation of Epp, and that it concealed that material fact with the intention that D&D would rely on the concealment. It further alleged that as a result of its reliance on Morgan Verkamp's failure to disclose, D&D was prevented from discovering Morgan Verkamp's breaches.

{**¶65**}  A claim for fraudulent concealment is subject to the four-year statute of limitations set forth in R.C. 2305.09.  *Malone v. Malone*, 7th Dist. Columbiana No. 98 CO 47, 1999 Ohio App. LEXIS 2209, 9 (May 5, 1999); *Auto Chem Labs. Inc., v. Turtle Wax, Inc.*, S.D.Ohio No. 3:07cv156, 2008 U.S. Dist. LEXIS 83158, 16 (Sept. 23, 2008).  This statute provides that all causes of action for relief on the ground of fraud shall be brought within four years of the cause of action accruing.  R.C. 2305.09(C).

{**¶66**}  If D&D's cause of action for fraudulent concealment accrued in 2010 when Morgan Verkamp filed Epp's qui tam action and failed to disclose its representation of Epp to D&D, the limitations period expired in 2014.  If the cause of action accrued in 2016 when D&D learned of Morgan Verkamp's representation of Epp, the limitations period expired in 2020.  Because the claim for fraudulent concealment was filed outside of the limitations period using either date, we need not specifically determine when the cause of action accrued.

{**¶67**}  Because it was filed outside of the statute of limitations, we hold that the trial court did not err in dismissing D&D's claim for fraudulent concealment.  The first assignment of error is accordingly overruled.

### *Conclusion*

{**¶68**}  Because the trial court properly dismissed all claims in D&D's complaint either because the complaint failed to state a claim upon which relief could be granted or because the claims were filed outside of the applicable limitations period, we affirm the trial court's judgment granting Morgan Verkamp's motion to dismiss.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

22

Please note:

The court has recorded its own entry on the date of the release of this opinion.